UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WILLIAM SOLANO,                                                              CASE NO.

    Plaintiff,

vs.

GARMIN USA, INC.,
a Foreign For-Profit Corporation,

    Defendant,
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

    Plaintiff, WILLIAM SOLANO, through undersigned counsel, sues Defendant, GARMIN USA, INC., a Foreign For-Profit Corporation (hereinafter referred to as "Garmin"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, Garmin is a foreign corporation authorized to do business and doing business in the State of Florida.

7) Defendant, Garmin owns and operates retail stores that sell devices for consumers that make use of GPS for automotive, aviation, marine, outdoor, and sport activities, activity trackers, smartwatches, dash cameras, backup cameras, dog training and bark-reducing devices. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a Tacx antenna with antenna connectivity and a Vivo Fit Jr. 2 activity tracker.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and permanent, incurable Rhegmatogenous Retinal Detachment in his left eye and debilitating Glaucoma in his right eye.

16) Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment. As such, Plaintiff is a member of a protected class under the

ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but he needs the assistance of special software for visually impaired persons. The software that he uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to locate the Defendant's retail stores and allows consumers to purchase devices for consumers that make use of GPS for automotive, aviation, marine, outdoor, and sport activities, activity trackers, smartwatches, dash cameras, backup cameras, dog training and bark-reducing devices, view items available at defendant's stores, create an online account, and sign up for email updates on Defendant's latest product launches, news and promotions based on registered devices, and exclusive offers.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing a Tacx antenna with antenna connectivity and a Vivo Fit Jr. 2 activity tracker through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to his as an alternative when he is not able to visit the Defendant's stores.

23) The Website also services Defendant's physical stores by providing information on its brand of merchandise, sales campaigns, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to locate Defendant's physical stores and retail locations, sells merchandise offered for sale by Defendant from its physical stores, allows consumers to create an online account, and allows visitors to sign up for an email account to receive updates on Defendant's latest product launches, news and promotions based on registered devices, and exclusive offers, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, allows the customers to sign up for an electronic account, and allows visitors to sign up for an email account to receive updates on Defendant's latest product launches, news and promotions based on registered devices, and exclusive offers, the Website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the Website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full

and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26) At all times material hereto, Defendant was and still is an organization owning and operating the Website. Since the Website is open through the internet to the public as an extension of the retail stores, by this nexus the Website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated Website it created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's email program and make purchases both online through the Website and at Defendant's physical stores.

28) The opportunity to shop Defendant's merchandise and secure information from his home for eventual use in Defendant's physical stores are important accommodations for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices, sales, discounts, and rewards programs. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the month of December 2019, Plaintiff attempted on several occasions to utilize the Website to browse through the merchandise and on-line offers to educate himself as to the

merchandise, sales, discounts, and promotions being offered, and with the intent to make a purchase through the Website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase the merchandise on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to locating the Defendant's retail stores, purchasing devices for consumers that make use of GPS for automotive, aviation, marine, outdoor, and sport activities, activity trackers, smartwatches, dash cameras, backup cameras, dog training and bark-reducing devices, viewing items available at defendant's stores, creating an online account, and signing up for email updates on Defendant's latest product launches, news and promotions based on registered devices, and exclusive offers.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

> Violation: Labels or instructions are not provided when content requires user input.
>
>> Note/Proof: Does not indicate in an understandable audible format the model/color of an item. Does not indicate in an understandable audible format the 'Phone' input field.
>>
>> Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*
>>
>> Nature of the Violation: required by WCAG 2.0's *Standard 3.3.2 Labels or Instructions.*
>
> Violation: When an input error is automatically detected, the item that is in error is not described to the user in text.
>
>> Note/Proof: Does not indicate in an audible format existing error when 'Phone' input field is left empty.
>>
>> Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.1 Error Identification (Level A).*
>>
>> Nature of the Violation: required by WCAG 2.0's *Standard 3.3.1 Error Identification.*
>
> Violation: When an input error that does not jeopardize the security or purpose of the content is automatically detected and suggestions for correction are known, these suggestions are not provided to the user.
>
>> Note/Proof: Does not indicate in an audible format existing error when trying to 'Continue to Payment'.
>>
>> Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.3 Error Suggestion (Level AA).*

<u>Nature of the Violation</u>: required by WCAG 2.0's *Standard 3.3.3 Error Suggestion.*

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who he can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent his in this case, and has agreed to pay them a reasonable fee for their services.

## **COUNT I – VIOLATION OF THE ADA**

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://www.garmin.com/en-US/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

>    **Violation**: Labels or instructions are not provided when content requires user input.
>
>> Note/Proof: Does not indicate in an understandable audible format the model/color of an item. Does not indicate in an understandable audible format the 'Phone' input field.
>>
>> Applicable WCAG 2.0 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).
>>
>> Nature of the Violation: required by WCAG 2.0's Standard 3.3.2 Labels or Instructions.
>
>    **Violation**: When an input error is automatically detected, the item that is in error is not described to the user in text.
>
>> Note/Proof: Does not indicate in an audible format existing error when 'Phone' input field is left empty.
>>
>> Applicable WCAG 2.0 Standard at Issue: Standard 3.3.1 Error Identification (Level A).
>>
>> Nature of the Violation: required by WCAG 2.0's Standard 3.3.1 Error Identification.

>**Violation**: When an input error that does not jeopardize the security or purpose of the content is automatically detected and suggestions for correction are known, these suggestions are not provided to the user.
>
>>Note/Proof: Does not indicate in an audible format existing error when trying to 'Continue to Payment'
>>
>>Applicable WCAG 2.0 Standard at Issue: Standard 3.3.3 Error Suggestion (Level AA).
>>
>>Nature of the Violation: required by WCAG 2.0's Standard 3.3.3 Error Suggestion.

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

52) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E. An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons

with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

Such other and further relief as the Court deems just and equitable.

[1] 

## COUNT II – TRESPASS

53)  Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54) Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)  Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56)  Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57)  Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58)  On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Privacy",  providing that they

use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

***Cookies and Similar Technologies***

***Websites:***
*To help analyze how you and other visitors navigate Garmin websites, and compile aggregate statistics about site usage and response rates, we, with assistance from third-party analytics service providers, collect certain information when you visit our site. This information includes IP address, geographic location of the device, browser type, browser language, date and time of your request, time(s) of your visit(s), products you've purchased, page views and page elements (e.g., links) that you click. We may use cookies, pixel tags, web beacons, clear GIFs or other similar tools on our site or in our email messages to assist us in collecting and analyzing such information. We use this information to provide better, more relevant content on our site, to measure the effectiveness of advertisements, to identify and fix problems, and to improve your overall experience on our site. We may also engage one or more third-party service providers to provide online advertisements on our behalf. They may use a pixel tag or other similar technology to collect information about your visits to sites, and they may use that information to send you targeted advertisements. For more information regarding this practice and to opt-out of such collection and use of this information by our third-party service providers, please see [Networkadvertising.org](Networkadvertising.org).*

*If you do not want information collected through the use of these technologies, there is a simple procedure in most browsers that allows you to automatically decline many of these technologies, or to be given the choice of declining or accepting them.*

*If you reside in the European Union or other jurisdiction that requires us to obtain your consent to use cookies on our sites, then you will have an opportunity to manage your cookie preferences on the sites; except that certain cookies are required to enable core site functionality, and you cannot choose to disable those cookies.*

***Garmin mobile apps and Garmin Express:***

*We also collect data from users about their usage of Garmin mobile apps and Garmin Express. The types of analytical information that are collected include the date and time the app accesses our servers, app version, the location of the device, language setting, what information and files have been downloaded to the app, user behavior (e.g., features used, frequency of use), device state information, device model, hardware and operating system information, and information relating to how the app functions. Garmin uses this data to improve the quality and functionality of our mobile apps, Garmin Express; to develop and market products and features that best serve you and other users; and to help identify and fix app stability issues and other usability problems as quickly as possible.*

*The legal ground for processing this analytical information is our legitimate interest in understanding how our customers interact with our products, apps and websites so we can enhance the user experience and functionality of our products, apps and websites.*

*Here are examples of third-party providers of analytics and similar services we currently use:*

   *ANALYTICS SERVICES:*

- ***Google**: Google Analytics is used to track site statistics and user demographics, interests and behavior on websites. We also use Google Search Console to help understand how our website visitors find our website and to improve our search engine optimization. [Find out more information](#) about how this analytics information may be used, how to control the use of your information, and how to opt-out of having your data used by Google Analytics.*

- *Hotjar*: This site uses Hotjar web analytics. Hotjar helps us measure and evaluate site usage behavior, such as mouse clicks, mouse movements, keystrokes (excluding personally identifiable information), scrolling activity, and pages visited and actions taken on the site. For more information, see the Hotjar privacy policy. You can opt-out of having Hotjar track your site usage behavior.
- *Azure Application Insights*: Azure Application Insights is used to help us better understand usage of Garmin Express to improve user experience. Azure Application Insights is a Microsoft service.
- *HockeyApp; Crashlytics (Fabric); Firebase*: HockeyApp, which is a Microsoft service, and Crashlytics and Firebase, which are Google services, are used to help us better understand usage of our apps to improve user experience and to identify and resolve the root causes of app crashes.
- *Flurry; Umeng; Amplitude*: Flurry, which is a Yahoo service, Umeng, and Amplitude are used to help us better understand usage of Garmin mobile apps to improve user experience.

*TAG MANAGEMENT:*

Garmin uses Tealium IQ Tag Management to help manage the various analytics services and cookie and pixel tag technologies Garmin uses to measure website usage. To provide such services, Tealium receives basic server log information from users of Garmin's websites (e.g., IP address, browser and operating system information).

*Application Performance Monitoring:*

*Garmin uses AppDynamics to analyze and monitor the performance of our complex ecosystem. To provide such services, AppDynamics receives basic request information, including IP address, necessary to detect and diagnose anomalous errors and response times.*

***Social Networks:***

*Third-party social networks that provide interactive plug-ins or social networking features (e.g., to allow you to connect to Facebook or Google to find friends to add as connections or to "Like" a page) on Garmin websites or mobile apps, may use cookies or other methods (e.g., web beacons) to gather information regarding your use of our websites and apps. The use of such information by a third party depends on the privacy policy available on that social network's website, which we encourage you to carefully review. Such third parties may use these cookies or other tracking methods for their own purposes by relating information about your use of our site with any of your Personal Information that they may have. We may also obtain analytics information from social networks that help us measure the effectiveness of our content and advertisements on social networks (e.g., impressions and clicks).*

59) Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

### Request for Jury Trial

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  lr1208@live.com
By_____/s/_____
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647